Filed 7/11/23  P. v. Gutierrez CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. OSCAR GUTIERREZ, Defendant and Appellant. | B319590 (Los Angeles County Super. Ct. No. BA149083) |

APPEAL from an order of the Superior Court of Los Angeles County, Ray G. Jurado, Judge.  Reversed and remanded with directions.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt E. Bloomfield and Lindsay Boyd, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

Defendant and appellant Oscar Gutierrez appeals the summary denial of his second petition for resentencing under Penal Code section 1172.6.[1]  The Attorney General concedes the trial court erred in denying the petition without first appointing counsel for defendant, but argues the error is harmless as defendant is not entitled to resentencing as a matter of law.  We conclude the error is prejudicial and reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

1.  *Defendant's Crime*[2]

"Defendant and his codefendant, Javier Miranda, were convicted of second-degree murder from a 1997 incident in which Miranda shot and killed the victim.  Miranda killed Oscar Cornejo shortly after a confrontation with Oscar's brother, Vicente, with whom Oscar shared a physical resemblance.

"At 8:15 p.m. on April 19, 1997, Vicente Cornejo was walking with his girlfriend to a barbecue hosted by Tomas

---

[1]  The statute was originally numbered 1170.95; it was renumbered effective June 30, 2022.  (Stats. 2022, ch. 58, § 10 A.B. 200.)  We use the current numbering.  Unless otherwise indicated, all undesignated statutory references are to the Penal Code.

[2]  We take our discussion of the facts from our opinion resolving defendant's appeal of his first resentencing petition.  (*People v. Gutierrez* (June 25, 2020, B300949) [nonpub. opn.] (First 1172.6 Appeal).)  That opinion, in turn, took the facts from the opinion issued by a different panel of this court in defendant's appeal from his conviction.  (*People v. Gutierrez* (Apr. 18, 2000, B132212) [nonpub. opn.] (Original Appeal).)  We take judicial notice of the prior opinions in both appeals, and we set forth the facts from the First 1172.6 Appeal with the understanding that our summary is not binding.

2

Gonzalez. A vehicle pulled up to a stop in front of them. Defendant was driving; Miranda was the passenger. Miranda got out of the car and issued a gang challenge to Vicente Cornejo. Vicente Cornejo's girlfriend answered that he was not a member of any gang. Miranda wanted to fight and continued to challenge Vicente Cornejo. Words were exchanged. Miranda reached under his shirt. Concerned that Miranda was reaching for a weapon, Vicente Cornejo punched him in the face and the men began fighting. Vicente Cornejo got the better of Miranda. Eventually, Gonzalez came over and broke up the struggle; he threw Miranda into the back seat of the car, telling Miranda and defendant to leave them alone. When Gonzalez was putting Miranda in the car, defendant turned around and told him, 'Payback's a bitch.'

"Miranda got out of the car again, this time holding a sawed-off rifle. He took a few steps toward Vicente Cornejo and Gonzalez while holding the rifle, and the two men ran away. Miranda got back into the car and defendant drove off.

"Police were called, and Gonzalez and Vicente Cornejo spoke with the officers. Vicente Cornejo decided not to go to the barbecue, but his brother Oscar went over with Gonzalez.

"In the meantime, defendant and Miranda picked up an additional male passenger and drove back to the scene. The car's headlights were off. Someone from the car yelled his gang name and an insult. Gonzalez and Oscar Cornejo approached the car. When they arrived at the bottom of the driveway, Miranda was already standing outside the car aiming his rifle. Defendant remained in the car. Oscar Cornejo said they were not gang members and did not want any trouble. Defendant Miranda attempted to fire his rifle; it only clicked. Gonzalez and Oscar

3

Cornejo ran up the driveway. Miranda's rifle was missing its magazine tube. To fire, it was necessary to hold up the gun and 'jiggle' it in order to get a round into the chamber. Defendant Miranda did this twice and fired off two rounds. One bullet hit Oscar Cornejo in the back and passed through his heart and lung, killing him.

"Miranda got back in the car and the three men sped away with headlights off. Police arrested Miranda and defendant later that night.[3] Miranda had the rifle in his possession.

"Defendant and Miranda were charged with the murder of Oscar Cornejo. (§ 187.) It was alleged that Miranda personally used a firearm within the meaning of section 12022.5, subdivision (a)(1). As to defendant, it was alleged that a principal was armed with a firearm within the meaning of section 12022, subdivision (a)(1).

"At trial, defendant did not testify. Codefendant Miranda testified as follows. Miranda had started the fight with Vicente Cornejo and had subsequently chased Vicente Cornejo and Gonzalez with his rifle. He had wanted to continue his fight with them, so he and defendant had picked up another man to even the numbers for a fistfight. When defendant drove back to the barbecue, Gonzalez and Oscar Cornejo threw things at the car. Miranda said he had believed the car was being hit with rocks and bottles, and perhaps someone had been shooting at the car. He was scared of being killed, so he got out of the car and waved the gun to scare away Gonzalez and Oscar Cornejo. Miranda then testified that he fired in the air to frighten them. He had been drinking and was affected by the alcohol. After he had fired

---

[3]   The prior appellate opinion, and therefore the present record, is silent as to what became of the third man in the car.

4

the first shot, Gonzalez and Oscar Cornejo ran, but he fired the second time even though they were running away and not throwing anything at the car.  Miranda believed he had aimed in the air, but he had probably shot in the direction of Oscar Cornejo.

"Both Miranda and defendant were acquitted of first degree murder, but found guilty of second degree murder.  The weapon allegations were found true.  Defendant was sentenced to 16 years to life in prison."

## 2.    *Defendant's Original Appeal*[4]

"This court affirmed defendant's conviction.  [Citation.]  On appeal, he challenged the language of the jury instructions given on aider and abettor liability, specifically that part of the instruction that aiders and abettors are 'equally guilty' as direct offenders.  The jury had been instructed in the language of CALJIC Nos. 3.00 and 3.01.  Defendant suggested that the 'equally guilty' words, when taken out of context, enabled the jury to find him guilty even if he did not possess the necessary mental state for aider and abettor liability.  We concluded the jury instructions in their entirety properly set forth the requirements for aider and abettor liability, including that the aider and abettor of a specific intent crime must share the perpetrator's specific intent.

"Defendant also argued that there was no legal basis for his conviction of second degree murder.  Specifically, he acknowledged that the evidence was sufficient to support the finding he was an aider and abettor, in that he threatened

---

[4]    We take our discussion of defendant's Original Appeal from our discussion of it in the First 1172.6 Appeal.

5

Gonzalez with payback and drove Miranda to the scene with the car's headlights off.  However, defendant argued that, given the jury's rejection of first degree murder, he could not be convicted of second degree murder either:  The jury must have concluded that Miranda's intent (either express or implied malice) was formed after anything defendant may have done to aid and abet Miranda.

"We rejected this argument, concluding that defendant's 'view of the facts is too narrow.  The facts support the finding that the intent to kill was formulated at the time [Miranda] was bested by Vicente Cornejo and [defendant] aided and abetted [Miranda] in his plan to take revenge by killing.  However, the jury may have concluded [Miranda] committed the murder while under the provocation of his humiliating loss of the original fight and, therefore, did not deliberate the killing.'  Alternatively, the court concluded the second degree verdict may have resulted from juror leniency.

"A footnote in the opinion read:  'Defendant Gutierrez acknowledges that the facts could have supported a conviction under the "natural and probable consequences" theory, by which "a person who aids and abets a confederate in the commission of a criminal act is liable not only for that crime (the target crime), but also for any other offense (nontarget crime) committed by the confederate as a 'natural and probable consequence' of the crime originally aided and abetted."  [Citation.]  However, the jury was not instructed on this theory.' "

3.    *Defendant's First Section 1172.6 Petition*

On March 26, 2019, defendant, self-represented, filed a form petition for relief under newly-enacted section 1172.6, which, at the time, provided an avenue for resentencing

6

defendants who had been convicted of felony murder or murder under the natural and probable consequences doctrine. Defendant requested appointment of counsel.

The trial court accepted briefing on the issue, but did not appoint counsel for defendant. The District Attorney filed an opposition; defendant did not file a reply.

The trial court then denied the petition, concluding defendant was not eligible for relief under the terms of the statute.

Defendant appealed. The Attorney General conceded that the trial court should not have accepted the District Attorney's opposition to the petition without appointing counsel for defendant. We accepted the concession. However, we concluded the error was harmless, because defendant was ineligible for relief as a matter of law. Specifically, he was not convicted under either a felony-murder or natural and probable consequences theory. We therefore affirmed. Our opinion was filed June 25, 2020.

**4.      *Defendant's Second Section 1172.6 Petition***

In 2021, the Legislature amended section 1172.6 to allow for resentencing petitions not only when a defendant was charged with felony murder or murder under the natural and probable consequences doctrine, but also when the prosecution was permitted to proceed "under [any] other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . ." (Stats. 2021, ch. 551 (S.B. 775).)

On March 1, 2022, defendant, again self-represented, filed a second petition for resentencing under section 1172.6, explaining that he was proceeding under the new law, and it was possible – under the jury instructions given in his case – that he

7

was, in fact, convicted under a theory in which malice was imputed to him solely for his participation in a crime.  Defendant attached to his petition four of the jury instructions given at his trial, which we will discuss below, and a copy of the appellate opinion in *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*), which he believed supported his position.  He again requested the appointment of counsel.

The following day, March 2, 2022, the trial court summarily denied the petition.  Relying on our opinion in the First 1172.6 Appeal, the court concluded that "defendant has not made a prima facie showing he is entitled to resentencing.  Defendant was not convicted based on any theory which imputed malice solely based on his participation in the crime.  Rather, defendant 'was convicted as an aider and abettor who shared [the actual shooter's] intent.' "

Defendant filed a timely notice of the current appeal.

### DISCUSSION

For the second time, the Attorney General concedes the trial court erred in denying the petition without appointing counsel for defendant.  Again, we accept the concession.  The Attorney General once more argues the error is harmless as defendant is ineligible for relief as a matter of law.  This time, we disagree.

### 1.    *Section 1172.6*

"Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015; Senate Bill 1437) eliminated natural and probable consequences liability for murder as it applies to aiding and abetting, and limited the scope of the felony-murder rule.  (Pen. Code, §§ 188, subd. (a)(3), 189, subd. (e), as amended by . . . Senate Bill 1437.)"  (*People v. Lewis* (2021) 11 Cal.5th 952, 957.)

8

Specifically, under the new law, an aider and abettor cannot be convicted of felony murder unless the defendant acted with the intent to kill or was a major participant who acted with reckless indifference to human life. Senate Bill 1437 also added section 1172.6 to the Penal Code, which creates a procedure for convicted murderers who could not be found guilty under the law as amended to retroactively seek relief. "The petition must contain (1) a declaration by the petitioner that he or she is eligible for relief; (2) the superior court case number and year of conviction; and (3) whether the petitioner requests counsel. If the petition states a prima facie showing of the defendant's entitlement to relief, the court must issue an order to show cause and hold an evidentiary hearing. [Citation.] [¶] Courts of Appeal were initially split as to when the appointment of counsel was required under section [1172.6]. This split was resolved in *Lewis, supra,* 11 Cal.5th at page 957, in which the court concluded that if the section [1172.6] petition contains all the required information, including a declaration that the petitioner was convicted of murder and is eligible for relief, the court must appoint counsel to represent the petitioner if requested. [Citation.] After the appointment of counsel and the opportunity for briefing, the superior court should consider whether the petitioner has made a prima facie showing of entitlement to relief, at which point the record of conviction may be considered." (*People v. Coley* (2022) 77 Cal.App.5th 539, 543-544.) Among other things, Senate Bill No. 775 amended section 1172.6 "to clarify that a person is entitled to an attorney upon the filing of a facially sufficient petition (thus memorializing the ruling in *Lewis*)." (*Coley,* at p. 544.)

Our Supreme Court in *Lewis* also discussed the limited nature of the prima facie inquiry. "While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section [1172.6] relief, the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Lewis, supra,* 11 Cal.5th at p. 971.)

As we have already explained, Senate Bill No. 775 extended section 1172.6 relief to defendants convicted of murder under any theory in which malice was imputed to them solely based on their participation in a crime.

## 2. *Defendant's Theory of Relief*

Defendant's second petition was based on Senate Bill No. 775 and *Langi*. His argument implicates the doctrine of aiding and abetting implied malice murder.

"[T]o be liable for an implied malice murder, the direct aider and abettor must, by words or conduct, aid the commission of the life endangering act, not the result of that act. The mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit the

10

*act*, intent to aid the perpetrator in the commission of the act, knowledge that the *act* is dangerous to human life, and acting in conscious disregard for human life."[5] (*People v. Powell* (2021) 63 Cal.App.5th 689, 713 (*Powell*); see also *People v. Reyes* (June 29, 2023, S270723) ___ Cal.5th ___ [2023 WL 4242765, *5].) Aiding and abetting implied malice murder is a theory of murder based on the aider and abettor's own mental state; it does not rely on imputed malice. (*People v. Silva* (2023) 87 Cal.App.5th 632, 639; *People v. Schell* (2022) 84 Cal.App.5th 437, 443-444; *People v. Vizcarra* (2022) 84 Cal.App.5th 377, 390-391.)

The *Langi* court recognized that the standard aiding and abetting instruction (CALJIC No. 3.01) read in combination with the standard implied malice murder instruction (CALJIC 8.31) could, on the right facts, potentially allow a jury to convict a defendant of second-degree murder on an impermissible imputed malice theory – if the defendant intended to aid and abet his associate's non-murder crime, without the jury necessarily finding the defendant possessed the conscious disregard mental state necessary for implied malice murder. (*Langi, supra,* 73 Cal.App.5th at pp. 981-983.)

---

[5] This is to be distinguished from the natural and probable consequences doctrine, in which the issue of whether the nontarget offense was a natural and probable consequence of the target offense was determined from an objective person standard, not the subjective intent of the aider and abettor. "Thus, under the natural and probable consequences doctrine, the prosecution was not required to prove that the aider and abettor was subjectively aware of the risk of death and acted in conscious disregard thereof." (*Powell, supra,* 63 Cal.App.5th at p. 711.)

11

In *Langi*, the jury instructions did not explain that, to be guilty as a direct aider and abettor of second degree murder, an accomplice must have acted with the mental state of implied malice. Therefore, the record before the *Langi* court did not conclusively negate the possibility that Langi was convicted on a theory of imputed malice. The Court of Appeal held that the trial court erred in denying him an evidentiary hearing on his section 1172.6 petition. (*Langi, supra,* 73 Cal.App.5th at pp. 983-984. See also *People v. Maldonado* (2023) 87 Cal.App.5th 1257.)

**3.** ***Defendant Established a Prima Facie Case***

Here, defendant attached to his section 1172.6 petition four of the jury instructions given in his case. Two of those instructions were CALJIC 8.31 – the standard second degree implied malice murder instruction, and CALJIC 3.01 – the standard aiding and abetting instruction at issue in *Powell* and *Langi*. He argues that, based on these instructions, it is possible that the jury could have: (1) convicted Miranda of second degree murder on the theory that he shot at Oscar Cornejo with reckless disregard for human life; and (2) convicted defendant of aiding and abetting that killing on the basis that defendant intentionally assisted Miranda in committing the shooting, but without finding that defendant had the necessary mental state of reckless disregard for human life.[6]

On appeal, the Attorney General argues that *Langi* was wrongly decided and that, in any event, it is distinguishable on the facts of this case. Both arguments are premature. Defendant

---

[6] Miranda testified that he did not intend to kill; he believed he was shooting in the air, and intended only to frighten the men he thought were throwing objects at the car, after they had already gotten the better of him in a physical altercation.

established a prima facie case on the minimal facts and record presented to the trial court. Counsel should have been appointed to enable the development of a full record and to argue any necessary legal issues.

Indeed, the record before the trial court consisted almost exclusively of the four jury instructions defendant attached to his petition, and the facts from the First 1172.6 Appeal, on which the trial court relied. Following briefing and argument on appeal, defendant's counsel augmented the appellate record with the entirety of the jury instructions from defendant's trial. Whether the full instructions, the evidence presented, counsel's closing arguments and the evidence presented reasonably allowed the jury to convict defendant on a theory of imputed malice murder is an issue the trial court should determine in the first instance. It may do so only following appointment of counsel. We cannot find harmless error in the failure to appoint counsel in this case, when the record, and the arguments from it, were not fully developed in the trial court.

## *DISPOSITION*

The order summarily denying defendant's section 1172.6 petition is reversed, and the matter remanded for appointment of counsel. The trial court shall hold a new eligibility hearing under section 1172.6, subdivision (c).


RUBIN, P. J.

WE CONCUR:


BAKER, J.                         MOOR, J.


13